## Smith Estate.

Argued March 24, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Frank E. Reed,* with him *Swaney & Whitmire,* for appellant.

*Leonard L. Ewing,* with him *E. Y. Calvin* and *Reed, Ewing & Ray,* for appellee.

PER CURIAM, April 12, 1948:

This is an appeal from the decree of the court below deciding that Myrtle Smith is *not* the *legitimate* daughter of Thomas A. Smith. She was born in Cleveland, Ohio, on January 9, 1894.

Thomas A. Smith of Beaver Falls, Pennsylvania, died intestate on December 24, 1944. Letters of administration were granted to the Beaver County Trust Company, which undertook to locate the heirs. The administrator concluded that the decedent's first cousins were his sole heirs. A first and partial account was filed on November

24, 1945. On January 21, 1946, claimant, Myrtle Smith, filed exceptions to the account alleging that she was the daughter and sole heir of the decedent and therefore was entitled to his entire estate. The court appointed an auditor to take testimony. The latter's finding was that she was an illegitimate daughter of the decedent.

Exceptions to the auditor's report were filed. The auditor was ordered to make a further finding as to whether claimant was the daughter of Thomas Smith. The auditor found that she was. Exceptions to the auditor's finding of fact were taken by the collateral heirs on the grounds, inter alia, that claimant failed to prove she was Thomas Smith's daughter and that she had executed affidavits in which she swore that she was *not* his daughter. Witnesses in behalf of the claimant testified that her mother, Emma Shaunescy, resided within two squares of Smith's house; that in 1893 or early 1894 she left Beaver Falls and went to Cleveland, Ohio; that Emma Shaunescy referred to decedent as her husband; that he visted her while she was in Cleveland and Pittsburgh and gave her and claimant money; that on October 5, 1898, she married Arthur Miles; and that Smith had some clothes in the home at Cleveland, but did not receive any mail there. There was other evidence of a similar nature.

The collateral heirs in an effort to rebut claimant's claim of legitimacy offered applications for passports filed and executed by Muriel Miles. In each application she stated that her father's name was Arthur Miles and that she was born in Cleveland, Ohio, January 9, 1897. This statement was sworn to. A member of the Bar of Beaver County testified that he examined the public record of the City of Cleveland, Ohio, and located a copy of a birth certificate showing the birth of a female white child to Emma Shaunescy *in Cleveland on January 9, 1894.* In the space provided for the name of the father appears the letters, "Ill." He stated that an examination of the records for the years 1899 to 1909 was also made

without discovery of any other record "of the birth under the name of Emma Schaunescy, Emma Smith, Mrs. Thomas A. Smith, or Thomas Smith," and found no record of a marriage or divorce in which Thomas A. Smith or Emma Smith were parties. He also testified that no marriage record 'or record of divorce as to Thomas A. Smith and Emma Shaunescy was located in the appropriate records in Beaver County, Pa. An agreement dated August 28, 1894 between Thomas A. Smith of Beaver Falls and Miss Emma Shaunescy of the same place was offered into evidence. The agreement recited that Emma Shaunescy gave birth to a female bastard child and alleged that Thomas A. Smith was the father of said child, "and whereas, in order to adjust and settle all liability which the said Thomas A. Smith may be subject by reason 'of said allegation; and to which he would be compelled to answer, in the case of a trial and conviction of fornication and bastardy." Weekly payments by Smith were provided for in the agreement until the child arrived at the age of five. The agreement also referred to "the execution and delivery of a bond by Thomas A. Smith to Emma Shaunescy, in the sum of one thousand dollars, conditioned that payments shall be made to an attorney for Emma Shaunescy."

The court below says: "Counsel for the claimant take the position that under the decision in Mays Estate, 141 Pa. Superior Ct. 479, the burden is on claimant to establish that she is the daughter 'of Thomas A. Smith, and when this fact is established, the burden shifts to the collateral heirs to prove her illegitimacy by evidence which is clear, direct, satisfactory and irrefragable. Claimant contends that this burden has not been met in this case." It concluded: "We agree with the auditor that the claimant, Myrtle Smith, is the daughter of the decedent, Thomas A. Smith, and that she is not the legitimate daughter of Thomas A. Smith, and therefore not entitled to his estate under the intestate laws of the Commonwealth of Pennsylvania."

"In Craig's Estate, 273 Pa. 530, Mr. Justice FRAZER said: 'While the letters between Craig and appellant indicate the relationship of father and child, this adds little weight to the theory of the legitimacy of the child. The question is not as to the paternity of appellant. That is conceded. Counsel for appellant argues the question here is one of legitimacy and that the burden is on respondent to overcome the presumption of legitimacy by clear and satisfactory facts. In this case, however, the question of legitimacy depends solely upon whether a valid marriage existed between the parents of the child and the proof of this fact must measure up to the standard applied in such cases. The real question for determination is whether appellant is the legitimate child of Hugh Craig, Jr., and this in turn must depend upon whether the parents were lawfully married. On this question . . . we are not convinced the master erred in concluding that while there was evidence of cohabitation while the parties lived on Mervine Street, the effect of this favorable evidence was destroyed by earlier and subsequent events . . . and brought the parties within the language of Bicking's Appeal, supra, to the effect that a man may live with his mistress in such a way as to create a limited reputation of marriage and yet the evidence may fall far short of showing sufficient circumstances to satisfy the mind of an actual agreement of marriage between them.' We think this statement in many respects is applicable to the instant case.

"In May's Estate, supra, Judge RHODES reviews the law on the question involved in the instant case, and affirms the rule that when kinship has been shown, it is not incumbent upon the plaintiff to go further and prove legitimacy. It is then for the heirs to disprove it, and that by proof which was clear, direct, satisfactory and irrefragable. A careful study of all the testimony leads to the conclusion that the proof in this case that the claimant is not the legitimate daughter of the decedent is clear, direct, satisfactory and irrefragable. There is no

testimony· showing a marriage ceremony having been performed between the claimant's mother and Thomas A. Smith. If they lived together at any time, such periods were intermittent and of short duration. There is no testimony tending to establish a common law marriage. . . . The registration of birth of the claimant in the City of Cleveland, contradicts the presumption of legitimacy. The reputation of the decedent during his entire life was that of a single man. The agreement between Thomas A. Smith and Emma Shaunescy, in our opinion, fully rebuts the presumption of legitimacy. The conduct of the claimant and decedent during decedent's lifetime shows a course of conduct inconsistent with legitimacy and consistent with illegitimacy."

The decree of the court below is affirmed; costs to be paid by the Estate of Thomas A. Smith, deceased.